**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| AVERY RENEE WEBSTER,<br>    Appellant, | DOCKET NUMBER<br>DC-0752-13-0280-I-2 |
| v. | |
| DEPARTMENT OF ENERGY,<br>    Agency. | DATE: July 6, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Avery Renee Webster, Upper Marlboro, Maryland, pro se.

James Christopher Bush, Esquire, and Michele A. Forte, Washington, D.C.,
    for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed her removal.  Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision slightly to correct the administrative judge's findings on the disability discrimination claim and the chosen penalty, and AFFIRM the initial decision.

## BACKGROUND

¶2 The appellant was employed as a GS-13 Attorney-Examiner with the agency's Office of Hearings and Appeals (OHA). *Webster v. Department of Energy*, MSPB Docket No. DC-0752-13-0280-I-1, Initial Appeal File (IAF), Tab 7 at 185. On March 14, 2012, the agency proposed the appellant's removal based on charges of inappropriate conduct and failure to follow supervisory instructions. IAF, Tab 6 at 10-13.

¶3 In support of the inappropriate conduct charge, the agency alleged that the appellant did not pick up two cases that had been assigned to her until 6 days after her supervisor, J.F., first directed her to do so. IAF, Tab 6 at 10. In support of the failure to follow supervisory instructions charge, the agency alleged that the appellant failed to attend scheduled meetings with J.F. on February 28, and March 6, 2012, in connection with her performance improvement plan (PIP), even though J.F. directed the appellant to report to those meetings. *Id*. at 11; *see* IAF, Tab 18 at 118; *see also Webster v. Department of Energy*, MSPB Docket No.

DC-0752-13-0280-I-2, Refiled Appeal File (RAF), Tab 5 at 203-04. The agency informed the appellant that, in deciding to propose her removal, it had considered her prior discipline, specifically: (1) a 1-day suspension issued on February 24, 2010, for three incidents of misconduct from August 2009, through January 2010; (2) a 5-day suspension issued on May 21 2010, for inappropriate conduct towards her former supervisor on March 16, and April 6, 2010, and failure to follow instructions set forth in a March 16, 2010 counseling memorandum; and (3) a 14-day suspension issued on October 21, 2011, for disrespectful and argumentative behavior towards J.F. on March 2, and April 20, 2011. IAF, Tab 6 at 11-12; *see* IAF, Tab 5 at 240-43, Tab 7 at 83-85, 114-15.

¶4 The appellant did not respond to the notice of proposed removal. *See* IAF, Tab 6 at 6. The deciding official sustained both charges cited in the notice and the appellant was removed effective April 16, 2012. *Id.* at 4, 6-8.

¶5 At the time of her removal, the appellant had a formal equal employment opportunity (EEO) complaint pending with the agency, and the agency had accepted several issues for investigation. *See* IAF, Tab 5 at 37-40, Tab 6 at 16. Following her removal, the agency accepted for investigation the issue of whether the appellant had been subjected to discrimination based on race, sex, and disability, and retaliation for prior EEO activity, when she was removed from her position. *See* IAF, Tab 5 at 212-13. Accordingly, the agency added that issue to her EEO complaint. *Id.* On January 11, 2013, the agency issued a final decision regarding the appellant's EEO complaint, finding no discrimination and notifying her of her right to file an appeal with the Board. *Id.* at 42-87.

¶6 The appellant filed a Board appeal challenging her removal and requested a hearing. IAF, Tab 1. She raised affirmative defenses of discrimination based on race, sex, and disability, as well as retaliation for prior EEO activity, whistleblowing, and other protected activity. *Id.* at 5; IAF, Tab 16 at 8.

¶7 Following a hearing, the administrative judge issued an initial decision that affirmed the appellant's removal. RAF, Tab 26, Initial Decision (ID) at 1, 13.

The administrative judge found that:  the agency proved both charges, ID at 3-7; the appellant did not prove her affirmative defenses, ID at 10-13; and the penalty of removal was reasonable, ID at 8-10.  The appellant has filed a petition for review, the agency has responded in opposition, and the appellant has replied to the agency's response.  Petition for Review (PFR) File, Tabs 1-2, 6.

## ANALYSIS

The administrative judge correctly found that the agency proved the inappropriate conduct charge.

¶8    In finding that the agency proved the inappropriate conduct charge, the administrative judge fully set forth the facts underlying the charge and considered the testimony of the appellant and J.F., as well as the documentary evidence relevant to the charge.  ID at 4-6.  The administrative judge noted that the appellant did not deny in either her emails to J.F. or in her testimony that she failed to pick up the case files when requested to do so on February 21, and 24, 2012.  ID at 4-5.  The administrative judge further noted that the appellant admitted during cross-examination that she did not pick up the case files on February 21, 22, or 24, 2012.  ID at 5 (citing RAF, Tab 25, Hearing Compact Disc (Hearing CD)).

¶9    The administrative judge also considered the reasons the appellant offered for her delay in retrieving the case files on February 21, and 24, 2012.  *See* ID at 4-6.  The administrative judge noted that the appellant testified that J.F. regularly "threw her out of her office" and implied that this was why she did not pick up the case files as requested on February 21, and 24, 2012.  ID at 4 (citing Hearing CD).

¶10   In contrast to the appellant's testimony, J.F. testified that the appellant refused to pick up the files as requested on both days, and that she had to be directed to leave J.F.'s office on February 24.  ID at 5.  The administrative judge credited J.F.'s version of events over the appellant's, finding that J.F. was calm, controlled, and reasonable, and that J.F.'s demeanor was very mild-mannered and

polite. *Id.* The administrative judge described the appellant's demeanor as "argumentative, obstructive, obstinate, disrespectful, controlling and disruptive," and she did not find the appellant's version of her interaction with J.F. on the dates in question "at all credible." *Id.* The appellant's reiteration on review of her account of the events of February 24, 2012, is essentially mere disagreement with the administrative judge's explained credibility findings, and, as such, provides no basis for disturbing the initial decision. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (the Board must give due deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at the hearing, and the Board may overturn credibility determinations only when it has "sufficiently sound" reasons for doing so); *see also Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (finding no reason to disturb the administrative judge's findings where the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

¶11    The appellant argues on review that, in sustaining the inappropriate conduct charge, the administrative judge failed to consider that J.F. violated agency policy by assigning her new work after her counseling memorandum[2] expired without first meeting with her to discuss her performance. PFR File, Tab 1 at 6-8. In support of her argument, the appellant asserts that, during a mandatory online training session in 2010-2011, all agency employees were informed that supervisors must discuss or review an employee's performance at the expiration of a counseling memorandum and prior to the assignment of additional work. *Id.* at 6-7.

---

[2] The appellant is apparently referring to the performance counseling memorandum that she received during her performance appraisal on November 3, 2011. *See* IAF, Tab 6 at 114-15. The memorandum was initially scheduled to expire on January 2, 2012; however, J.F. extended the memorandum an additional 30 days. *See id.* at 116.

¶12     We find the appellant's argument unavailing.  First, the appellant has not established that this alleged announcement during an online training session constitutes an actual agency policy.  Moreover, even assuming arguendo that such a policy existed, the appellant acted inappropriately by not picking up the case files until February 27, 2012.  Employees do not have an unfettered right to disregard supervisory instructions.  *See Harris v. Department of the Air Force*, 62 M.S.P.R. 524, 528 (1994).  Rather, an employee must first comply with an order and then, if she disagrees with the order, register her complaint or grievance later, except in certain limited circumstances, such as where obedience would cause her irreparable harm or place her in a clearly dangerous situation.  *See Larson v. Department of the Army*, 91 M.S.P.R. 511, ¶ 21 (2002).  Thus, even if J.F. violated an agency policy by assigning the appellant new cases without having discussed her performance with her after the counseling memorandum expired, the appellant was not justified in refusing to pick up the cases on February 21, 2012, and again on February 24, 2012, as directed, given that the appellant did not show that having to follow J.F.'s instruction would have harmed or endangered her in any way.  *See Cooke v. U.S. Postal Service*, 67 M.S.P.R. 401, 408 (the appellant was not entitled to disobey a reassignment order, despite the Board's ultimate agreement that it was not effected properly, because his conduct was not protected by a privilege or by a concern that it would cause him irreparable harm), *aff'd*, 73 F.3d 380 (Fed. Cir. 1995) (Table).

The administrative judge correctly found that the agency proved the charge of failure to follow supervisory instructions.

¶13     On review, the appellant argues that she was not allowed to challenge the merits of the PIP and that the administrative judge could not have found that "there is no question [J.F.'s] instructions concerning the appellant's attendance at weekly PIP meetings were proper" without first finding that the PIP was properly issued.  PFR File, Tab 1 at 8.  We disagree.  The administrative judge correctly found that J.F.'s instructions concerning the appellant's attendance at weekly PIP

meetings were proper, and that there was no dispute that the appellant refused to comply with them. ID at 6; *see* RAF, Tab 17 at 104-05 (admitting that, as part of her PIP, the appellant was required to meet with J.F. every Tuesday beginning February 28, 2012; J.F. directed her to attend scheduled meetings on February 28, and March 6, 2012; and she did not attend those meetings); *see also Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 556 (1996) (an agency establishes the charge of failure to follow supervisory instructions by showing that proper instructions were given to an employee and that the employee failed to follow them). Also, contrary to the appellant's apparent contention, the administrative judge's determination that J.F.'s instructions were proper did not include a determination regarding the propriety of the PIP, which is not within the Board's jurisdiction. *See Shaishaa v. Department of the Army*, 58 M.S.P.R. 450, 454 (1992) (finding that an employee's placement on a PIP is outside the scope of the Board's jurisdiction).

¶14    Further, to the extent that the appellant now argues that J.F.'s instructions were improper, we disagree. As the appellant's immediate supervisor, J.F. acted properly by directing the appellant to attend meetings to discuss her performance. Moreover, in light of the appellant's argument regarding the first charge, i.e., that J.F. acted improperly by assigning her new cases without first discussing her performance with her, we find inconsistent the appellant's apparent contention that J.F.'s instructions directing her to meet to discuss her performance were improper. Given the appellant's claim that she repeatedly asked to meet with J.F. to discuss her performance after the expiration of her counseling memorandum, *see* PFR File, Tab 1 at 8, it seems that the appellant would have welcomed the opportunity to attend the PIP meetings.

¶15    We also find unavailing the appellant's argument that she was justified in not following J.F.'s instructions to attend the meetings on February 28, and March 6, 2012, because she believed that, unless a third party was present during those meetings, her attendance would jeopardize her health, safety, and welfare.

*Id.* at 9-10. As noted above, an employee generally must follow a supervisor's order and then register a complaint or grievance later except in limited circumstances, such as where obedience would place the employee in a clearly dangerous situation, or would cause her irreparable harm. *Larson*, 91 M.S.P.R. 511, ¶ 21; *Cooke*, 67 M.S.P.R. at 407-08. An appellant's subjective and unsupported apprehension of danger does not justify her refusal to perform her duties, however. *Larson*, 91 M.S.P.R. 511, ¶ 21 (citing *Haymore v. Department of the Navy*, 9 M.S.P.R. 499, 504-05 (1982)). Here, there is no evidence to support the appellant's apparent claim that meeting with her supervisor without a third party present would place her in a dangerous situation. Thus, we find that the appellant's purported concern about her health, safety, and welfare is not a legitimate or plausible excuse for her failure to follow J.F.'s instructions to attend the meetings on February 28, and March 6, 2012.

<u>The administrative judge correctly found that the appellant failed to prove her affirmative defenses.</u>

*Disability discrimination*

¶16     On review, the appellant reiterates her disability discrimination claim. *See* PFR File, Tab 1 at 14-18. As a federal employee, the appellant's disability discrimination claim arises under the Rehabilitation Act of 1973. *Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 8 (2010). However, the Equal Employment Opportunity Commission (EEOC) regulations implementing the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act (ADAAA), have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. *Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶ 22 (2015); 29 C.F.R. § 1614.203(b). Those regulations are found at 29 C.F.R. Part 1630.[3]

---

[3] The ADAAA, which expanded the definition of disability, became effective on January 1, 2009. *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 17 (2010) (citing Pub. L. No. 110-325, 122 Stat. 3553 (2008), codified at 42 U.S.C. § 12101 et seq.). As noted above, the appellant was removed from her position on

¶17    To prove disability discrimination, the appellant first must establish that she is an individual with a disability as that term is defined in the ADAAA and the EEOC regulations. *Thome*, 122 M.S.P.R. 315, ¶ 24 (citing *Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579, ¶ 38 (2012)).  The appellant may prove that she has a disability by showing that she:  (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1).  An impairment is considered to be a disability if it substantially limits an individual's ability to perform a major life activity as compared to most people in the general population.  29 C.F.R. § 1630.2(j)(1)(ii).  Major life activities include, but are not limited to, caring for oneself, performing manual tasks, eating, lifting, bending, concentrating, communicating, and working; major life activities also include the operation of major bodily functions.  42 U.S.C. § 10012(2).

¶18    The administrative judge found that the appellant failed to meet her burden of even articulating, let alone proving, a prima facie case of discrimination on the basis of disability.  ID at 10.  In support of this finding, the administrative judge noted that the appellant identified "pregnancy" or "high-risk pregnancy" as her disability, *id.* (citing IAF, Tab 1); however, she gave birth in July 2011, and thus was not pregnant at or even close to the time of any of the events at issue in this appeal.  ID at 11 (citing IAF, Tab 1, Tab 6 at 279; Hearing CD).  Therefore, as the administrative judge properly found, the appellant cannot show that her removal was based on her alleged disability.  *Id.*

¶19    The administrative judge further stated that pregnancy is not considered a disability under the ADAAA, and that any associated disabling conditions the appellant may have experienced during her pregnancy were by definition "transitory and minor" and thus also would not constitute disabilities under the

---

April 16, 2012.  *See* IAF, Tab 6 at 4.  Thus, the ADAAA and the amended regulations implementing the ADAAA apply in this case.  *See Simpson*, 113 M.S.P.R. 346, ¶ 10.

Act. *Id.* (citing 29 C.F.R. § 1630.2(h) and 42 U.S.C. § 12102(3)(B)). The administrative judge found that, in any event, the appellant produced no evidence showing that she was disabled by any condition, whether associated with her pregnancy or not, at the time of the events at issue in this appeal. *Id.*

¶20    Although correctly noting that pregnancy is not considered a disability under the ADAAA, the administrative judge erred in stating that any disabling conditions associated with the appellant's pregnancy would not constitute disabilities under the Act. The Board recently recognized that pregnancy-related impairments may constitute disabilities under the ADA. *See Thome*, 122 M.S.P.R. 315, ¶ 25. This error provides no basis for disturbing the initial decision, however. The administrative judge correctly found that the appellant produced no evidence showing that she was disabled by any condition, whether associated with her pregnancy or not, during the dispositive events at issue in this appeal. ID at 11. Although the appellant contends on review that she was disabled during the relevant time period because "some of [the] medical impairments resulting from [her] high-risk pregnancy persisted for months after giving birth," PFR File, Tab 1 at 14, she failed to show that her alleged pregnancy-related impairments substantially limited her ability to work or perform any other major life activity,[4] *see Haack v. U.S. Postal Service*, 68 M.S.P.R. 275, 282 (1995) (the mere fact that an employee has a medical impairment, even one of long duration, does not mean that she is an individual with a disability if she fails to show that her impairment interferes with a major life activity).

---

[4] The appellant's contention regarding the duration of her pregnancy-related impairments is inconsistent with a June 22, 2012 affidavit she submitted in connection with her January 2012 EEO complaint, wherein she acknowledged that, once her child was born, she no longer suffered from the pregnancy-related medical conditions she identified in support of her disability discrimination claim, with the exception of hypertension. *See* IAF, Tab 5 at 90.

¶21     We also find unpersuasive the appellant's argument that she can establish a prima facie case of disability discrimination because the agency regarded her as having a disability.  PFR File, Tab 1 at 14.  The sole argument she advances in support of this claim is that, in a June 20, 2012 affidavit, J.F. confirmed that she regarded the appellant as having a disability *during* her high-risk pregnancy.  *Id.* at 15 (citing IAF, Tab 5 at 120).  Significantly, however, the appellant does not allege, let alone show, that the agency regarded her as being disabled at the time of the events at issue in this appeal.  Accordingly, we conclude that she has not established that she is a person with a disability and that her disability discrimination claim therefore fails.

*Whistleblower reprisal*

¶22     In an adverse action appeal such as this, an appellant's whistleblower reprisal claim is treated as an affirmative defense.  *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 21 (2014).  Once the agency proves its adverse action case, the appellant must show by preponderant evidence that she made a disclosure protected under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action.  *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013).  A protected disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8)(A); *Shannon*, 121 M.S.P.R. 221, ¶ 22.  The test for determining if an employee's belief concerning such a matter is reasonable is this: "could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence [the wrongdoing in question]?" *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

¶23     Here, the administrative judge stated that "the appellant refused to articulate even the rudimentary basics of such a claim during the discovery process and as a

result was sanctioned by not being allowed to produce any evidence or argument in support of this claim." ID at 10-11 (citing IAF, Tabs 12, 14, 19; RAF, Tabs 3, 11, 12). The administrative judge found that the appellant thus did not prove this affirmative defense. ID at 11.

¶24 The appellant challenges this finding on review, asserting that the record contains information regarding her protected disclosures and formal complaints, their contents, and when and to whom they were made. PFR File, Tab 1 at 19. She alleges that, in finding that she did not prove this affirmative defense, the administrative judge "erroneously failed to consider any of the information . . . in the more than 4000 page record." *Id*.

¶25 We disagree with the appellant's suggestion that the administrative judge was remiss in her review of the record. The appellant has the burden of proving an affirmative defense by the preponderance of the evidence. *See* 5 C.F.R. § 1201.56(a)(2)(iii). A party "whose submissions lack clarity risks being found to have failed to meet his burden of proof." *Luecht v. Department of the Navy*, 87 M.S.P.R. 297, ¶ 8 (2000). Contrary to the appellant's apparent contention, "it is not the Board's obligation to 'pore through the record' . . . or to construe and make sense of allegations that set forth at various parts of an extremely voluminous case file." *Keefer v. Department of Agriculture*, 92 M.S.P.R. 476, ¶ 18 n.2 (2002). Rather, it is up to litigants to present their allegations and evidence in an organized way.[5]

¶26 In support of her apparent argument on review that the information in the record is sufficient to establish her whistleblower retaliation claim, the appellant cites the following: "AG-1, Tab 18 at 166-117, 126, 132-135, 138-139, 140-134, 149-151; AF-1, Tab 4 at 189-210; AF-1, Tab 6 at 121-129." PFR File, Tab 1

---

[5] In addition, although we provide some latitude for appellants who appear pro se, the appellant here is an attorney.

at 19.[6] In considering the appellant's apparent contention that the information in the record is sufficient to establish her whistleblower reprisal claim, we have reviewed the documents that we believe that she apparently intended to cite.

¶27    Based on our review of this evidence, we find that it is insufficient to establish the appellant's prima facie allegation of whistleblower reprisal. We find, with the exception of the appellant's claim that agency officials abused their authority by refusing to return her private banking information, which we discuss immediately below, that her purported disclosures are vague, conclusory, and unsupported, and therefore do not rise to the level of protected disclosures. *See, e.g.*, *McCorcle v. Department of Agriculture*, 98 M.S.P.R. 363, ¶ 24 (2005) (vague allegations of wrongdoing, lacking in specific detail and consisting in part of only the appellant's personal complaints and grievances, did not rise to the level of protected disclosures).

¶28    We also have considered whether the appellant made a protected disclosure by alleging in emails to agency officials that OHA managers had illegally obtained her personal banking information and refused to return it to her, thereby abusing their authority. *See* IAF, Tab 18 at 116-17, 132-35. An abuse of authority occurs when there is an arbitrary or capricious exercise of power by a federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons. *Stiles v. Department of Homeland Security*, 116 M.S.P.R. 263, ¶ 17 (2011).

¶29    The record shows that: the information in question consisted of a printout from a bank website, which did not contain any personally identifiable information; OHA managers came into possession of the printout because the

---

[6] We found it difficult to review the appellant's assertions in this regard, given that her list of citations contains some apparent typographical errors. Specifically, the appellant cites AG-1 instead of AF-1, Tab 18 at 166-117 and 140-134 instead of Tab 18 at 116-17 and 140-44. *Id.* The appellant's citation to AF-1, Tab 4 at 189-210 also is incorrect, as IAF, Tab 4 contains only 3 pages. We are unable to ascertain which portion of that part of the record she intended to cite.

appellant inadvertently left it in a work file that she submitted to J.F.; and the printout was returned to the appellant shortly after she requested its return. *See* IAF, Tab 18 at 117. In light of these facts, we find that a disinterested observer with knowledge of the essential facts known to the appellant could not reasonably conclude that the agency's actions vis-à-vis her banking information evidenced an abuse of authority or any other kind of wrongdoing. Accordingly, we find that the appellant's disclosure regarding the agency's possession of her banking information was not protected.

¶30 We further find unpersuasive the appellant's contention on review that she was "constructively denied the opportunity" to establish a prima facie case of whistleblower reprisal because of the following alleged actions of the agency: presentation of falsified testimony that is still in the record;[7] obstruction of the discovery process by allowing certain "named officials"[8] to answer discovery questions specifically designated for personnel in the agency's Office of the Chief Human Capital Officer and Office of the Secretary, *see* RAF, Tab 4 at 125-26; inability to timely, completely, and appropriately reciprocate discovery; and failure to read the information in the record. PFR File, Tab 1 at 20.

¶31 It is unclear, and the appellant does not explain, how the agency's alleged presentation of falsified testimony or failure to read the information in the record prevented her from establishing a prima facie case of whistleblower retaliation. We also find unavailing her claim on review that the agency acted improperly by allowing certain "named officials," instead of personnel in the Office of the Chief Human Capital Officer and Office of the Secretary, to answer interrogatories.

---

[7] She indicates that she is referring to statements that OHA employees provided the Office of Personnel Management during its 2011 and 2012 investigations involving her security clearance. *See* PFR File, Tab 1 at 20 n.8 (citing RAF, Tab 6 at 59-78).

[8] The appellant does not explain what she means by "named officials." PFR File, Tab 1 at 9. Based upon our review of the record, it appears that she is referring to the following individuals: the proposing and deciding officials; her former first-line supervisor, and OHA's Director. *See* RAF, Tab 4 at 116.

PFR File, Tab 1 at 20. We know of no authority, nor does the appellant cite any, which would allow her to require that a particular agency office provide answers to her discovery requests. In any event, if the appellant believed that the answers the agency provided were inadequate, or that the agency withheld information or otherwise failed to cooperate in the discovery process, she could have filed a motion to compel discovery. *See* 5 C.F.R. § 1201.73(e). Because she did not do so, she has failed to preserve the issue for the Board's review. *See Szejner v. Office of Personnel Management*, 99 M.S.P.R. 275, ¶ 5 (2005), *aff'd*, 167 F. App'x 217 (Fed. Cir. 2006).

¶32 The appellant argues, moreover, that she should have been allowed to "present witnesses, discuss and prove a prima facie case of whistleblowing [reprisal] . . . ." PFR File, Tab 1 at 20. As discussed below, the appellant was not allowed to present any evidence or argument in support of her whistleblower reprisal claim as a sanction for repeatedly failing to comply with the administrative judge's orders to provide complete answers to the agency's discovery requests relevant to that affirmative defense. *See* RAF, Tab 12; *see also* ID at 10-11. We therefore have construed this argument as a claim that this sanction was improper.

¶33 Pursuant to 5 C.F.R. § 1201.43, an administrative judge may impose sanctions upon a party as necessary to serve the ends of justice. *Smets v. Department of the Navy*, 117 M.S.P.R. 164, ¶ 11 (2011), *aff'd*, 498 F. App'x 1 (Fed. Cir. 2012). When a party fails to comply with an order, the administrative judge may "[p]rohibit the party failing to comply with the order from introducing evidence concerning the information sought, or from otherwise relying upon testimony related to that information." 5 C.F.R. § 1201.43(a)(2). The Board ordinarily will not disturb an administrative judge's determination to impose a sanction unless it is shown that she abused her discretion or that her erroneous ruling adversely affected a party's substantive rights. *Simon v. Department of Commerce*, 111 M.S.P.R. 381, ¶ 11 (2009).

¶34    Based on our review of the record, we find that the appellant was not diligent in complying with the administrative judge's orders regarding the agency's many discovery requests and motions to compel pertaining to her whistleblower reprisal claim, despite multiple warnings from the administrative judge that her continued noncompliance could result in sanctions, up to and including prohibiting her from introducing evidence or testimony concerning her whistleblowing affirmative defense. *See Cioce v. Department of the Army*, 69 M.S.P.R. 564, 566 (1996); *see also* 5 C.F.R. § 1201.43; IAF, Tab 14 at 1-2, Tab 19; RAF, Tabs 3, 7, 11-12.  Given these circumstances, we find that the administrative judge did not abuse her discretion by preventing the appellant from introducing certain evidence or argument regarding her whistleblower reprisal claim.[9]

*Race and sex discrimination*

¶35    An employee may establish a prima facie case of prohibited discrimination by introducing preponderant evidence to show that she is a member of a protected group, she was similarly situated to an individual who was not a member of the protected group, and she was treated more harshly than the individual who was not a member of her protected group. *Hidalgo v. Department of Justice*, 93 M.S.P.R. 645, ¶ 9 (2003).  The Board has held that, for another employee to be deemed similarly situated for purposes of an affirmative defense of discrimination based on disparate treatment, all relevant aspects of the appellant's employment situation must be "nearly identical" to that of the comparator employee. *Ly v. Department of the Treasury*, 118 M.S.P.R. 481, ¶ 10 (2012).  Thus, to be similarly situated, a comparator must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances. *Id.*

---

[9] The administrative judge also denied the appellant's cross-motion for sanctions.  RAF, Tab 7 at 1.  The appellant has not challenged this ruling on review, and we do not address it further.

¶36       On appeal the appellant asserted that the agency discriminated against her based on her race (African-American) and sex. IAF, Tab 1 at 10, Tab 16 at 8. She also alleged that she was treated more harshly than S.F., a Caucasian male. IAF, Tab 19 at 18. In his hearing testimony, S.F. stated that he became angry during a staff meeting in 2009 and left the meeting, slammed the door, and possibly cursed as he left. ID at 11. He further testified that his supervisor, who was not J.F., gave him a letter noting the unacceptability of his behavior. *Id.* (citing Hearing CD). S.F. denied ever refusing a work assignment. *Id.* (citing Hearing CD).

¶37       The administrative judge found that the appellant did not show that a similarly situated employee not in her protected groups was treated more favorably than she was in comparable circumstances. ID at 12. In particular, she found that the appellant failed to show that S.F.'s admitted misconduct in 2009 was "remotely similar" to the conduct with which she was charged, or that S.F. had a lengthy history of inappropriate conduct, as did she. *Id.* The administrative judge further found that the appellant produced no evidence other than her own beliefs and unsupported allegations to show that her removal was in fact based on her race or sex rather than her repeated serious misconduct. *Id.* The administrative judge therefore found that the appellant did not meet her burden of proving her claims of race and sex discrimination. *Id.*

¶38       The appellant challenges this finding on review, asserting that her alleged misconduct was "far less egregious" than S.F's misconduct. PFR File, Tab 1 at 22. She alleges that S.F. "repeatedly and openly displayed a pattern of disrespectful conduct" that included various actions of which she was never accused, such as slamming doors, abruptly leaving staff meetings, leaving work an hour early each day, cursing, and refusing to complete an assignment given to him by his supervisor. *Id.* (citing RAF, Tab 17 at 36, 49; Hearing CD).

¶39       We find the appellant's argument unpersuasive. The appellant does not cite any evidence to support her assertions of S.F.'s alleged "pattern of disrespectful

conduct,"[10] and S.F. convincingly testified at the hearing that he did not refuse to accept an assignment or fail to follow his supervisor's instructions. RAF, Tab 25. Also, as indicated above, J.F. was not S.F.'s supervisor at the time of his misconduct. Thus, we find that the appellant failed to show that she and S.F. engaged in similar misconduct or reported to the same supervisor. Therefore, we discern no reason to disturb the administrative judge's finding on this affirmative defense.

*EEO retaliation*

¶40    To meet her ultimate burden of proof on retaliation for EEO activity, the appellant must establish not only that she engaged in protected activity and that the accused official was aware of that activity, but also that there is a "genuine nexus" between the alleged retaliatory motive and the adverse action. *Rhee v. Department of the Treasury*, 117 M.S.P.R. 640, ¶ 26 (2012). To establish a genuine nexus, the appellant must show that the action was taken because of the protected activity. *Id.* This requires the Board to weigh the severity of the appellant's alleged misconduct against the intensity of the agency's motive to retaliate. *Id.*

¶41    The administrative judge found that the appellant engaged in EEO activity by filing an EEO complaint on January 12, 2012,[11] i.e., before the actions at issue in this appeal, and that the proposing and deciding officials were aware of her prior EEO activity. ID at 12 (citing Hearing CD). The administrative judge found, though, that the appellant did not show that any motive to retaliate against her outweighed the abundant evidence of misconduct for which she was removed. ID at 13. Therefore, the administrative judge found, the appellant did not meet

---

[10] The documentary evidence that the appellant cites in support of her claim that S.F. engaged in a pattern of misconduct—RAF, Tab 17 at 36, 49—does not pertain to S.F.

[11] The final agency decision states that the appellant filed a formal EEO complaint on January 18, 2012. *See* IAF, Tab 1 at 9.

her burden of proving that her removal was in retaliation for her protected EEO activity. *Id.*

¶42     On review, the appellant asserts that, in finding that she failed to prove her claim of retaliation for protected activity, the administrative judge did not mention any of her complaints besides her January 2012 EEO complaint. *See* PFR File, Tab 1 at 21-23. She also asserts that the administrative judge supported her finding that the appellant failed to prove her retaliation claim by stating, "The record is replete with evidence of the appellant's constant disrespectful, contumacious behavior towards [J.F.] and her other supervisors . . . ." but failed to describe the appellant's behavior or support her finding with a citation to the record. *Id.* at 23 (citing ID at 5). The appellant further contends that she was unable to prove that the agency had a motive to retaliate against her because the administrative judge "excluded all of [her] witnesses and dismissed nine of [her] other related issues . . . ." *Id.* at 23.

¶43     These arguments are unpersuasive. Although the administrative judge mentioned only the appellant's January 2012 EEO complaint in addressing her claim of retaliation, ID at 12, we find this omission inconsequential. Next, contrary to the appellant's assertion, the administrative judge did not make the statement regarding the appellant's disrespectful conduct towards her supervisors in support of her finding that the appellant failed to prove her retaliation claim. Rather, the administrative judge made this statement in support of her finding that the appellant's version of the events pertaining to the inappropriate conduct charge was not at all credible. *See* ID at 5. Further, as discussed below, the administrative judge did not abuse her discretion in denying the appellant's request for witnesses.

¶44     Regarding the appellant's contention that she was unable to prove this affirmative defense because the administrative judge "dismissed nine of [her] other related issues," the appellant is apparently referring to the nine actions that she raised in her January 2012 EEO complaint, as amended, in addition to her

removal.[12]  IAF, Tab 1 at 9-10.  The appellant seems to contend that she should have been allowed to argue the merits of these actions because they are "inextricably intertwined" with her removal and her whistleblowing activities. PFR File, Tab 1 at 12, 23; *see* RAF, Tab 21 at 7.

¶45    The Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule or regulation.  *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985).  With the exception of the removal, none of the actions raised in the appellant's January 2012 EEO complaint, as amended, are within the Board's jurisdiction.  *See* 5 C.F.R. § 1201.3(a)(1)-(11).  The Board has previously held that nonappealable actions, even when intertwined with otherwise appealable actions, may be excluded from a hearing because they fall outside the Board's jurisdiction.  *See, e.g.*, *Wilson v. Department of Veterans Affairs*, 102 M.S.P.R. 70, ¶ 8 (2006) (excluding all issues other than an appealable 30-day suspension and the appellant's affirmative defenses related solely thereto); *Lethridge v. U.S. Postal Service*, 99 M.S.P.R. 675, ¶ 9 (2005) (nothing suggests that the Board has jurisdiction over nonappealable actions even when they are allegedly "inextricably intertwined" with appealable actions). Thus, the scope of this adverse action appeal is limited to the appellant's removal and the affirmative defenses she raised in connection with her removal.

The administrative judge correctly found that the removal penalty is reasonable.

¶46    Where, as here, all of the agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness.  *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 11

---

[12] During the proceedings below, the administrative judge who originally presided over this appeal informed the appellant that, other than her removal, all of the actions cited in her EEO complaint were outside of the Board's jurisdiction.  *See* IAF, Tab 16 at 7; *see also* RAF, Tab 21 at 5-7.  The appellant then narrowed the scope of her appeal to include only her removal and the affirmative defenses that she raised in connection with her removal.  *See* IAF, Tab 16 at 8; *see also* RAF, Tab 21 at 6.

(2010); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). The Board will modify or mitigate an agency-imposed penalty only where it finds the agency failed to weigh the relevant factors or the penalty clearly exceeds the bounds of reasonableness. *Ellis*, 114 M.S.P.R. 407, ¶ 11; *Douglas*, 5 M.S.P.R. at 306.

¶47    The decision notice and the hearing testimony of the deciding official, as summarized in the initial decision, show that he appropriately considered the relevant *Douglas* factors in deciding to remove the appellant. *See* IAF, Tab 6 at 6-7; *see also* ID at 8-9. The administrative judge found no basis for disagreement with the deciding official's conclusions about the necessity of the appellant's removal. ID at 9-10. She therefore found the agency proved that removal was reasonable in these circumstances. ID at 10.

¶48    The appellant argues on review that the agency improperly failed to consider the following circumstances as mitigating factors in determining the penalty: her request that a third party be present during employment discussions with agency managers; the agency's Human Capital policy, practice, and procedure; her history with the "named officials;" her protected activity, complaints, and disclosures; and OHA's practices regarding the issuance of disciplinary actions and counseling memoranda. PFR File, Tab 1 at 9.

¶49    Regarding the first circumstance set forth above, we find unpersuasive the appellant's apparent argument that the agency should have considered as a mitigating factor her excuse for failing to comply with J.F.'s instructions to attend the PIP meetings, i.e., her purported concern that attending those meetings without a third party present would jeopardize her health, safety, and welfare. An agency is obligated to make reasonable inquiries into exonerating facts brought to its attention by an appellant before removing her. *Uske v. U.S. Postal Service*, 60 M.S.P.R. 544, 550 (1994), *aff'd*, 56 F.3d 1375 (Fed. Cir. 1995). In this case, however, the appellant chose not to respond to the notice of proposed removal. If she believed that there were exonerating circumstances for her misconduct, then it

was incumbent on her to so inform the deciding official. Having failed to do so, she cannot fault the agency for not considering her purported justification for her misconduct as a mitigating factor in its penalty determination.

¶50 Moreover, as discussed above, this excuse for her misconduct was not legitimate. In fact, the appellant's rationalization for her misconduct arguably might constitute an aggravating factor. *See Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 26 (2008) (an appellant's rationalizations for his behavior and lack of remorse for his misconduct reflect a lack of rehabilitative potential and may properly be considered as aggravating factors).

¶51 As for the other circumstances cited as mitigating factors, the appellant does not explain what she means by her "workplace history with the named officials" or why that history constitutes a mitigating factor. PFR File, Tab 1 at 9. Similarly, she does not explain what she means by the agency's Human Capital policy, practice, or procedure, or "[OHA's] practices with regard to the issuance of disciplinary actions or counseling memoranda," let alone why the agency should have considered those practices and procedures as mitigating factors. *Id.* Also, we know of no authority, and the appellant cites none, to support her apparent assertion that the agency should consider her prior protected complaints and whistleblowing activity as mitigating factors in determining her penalty for misconduct. *Id.* Thus, we find no basis for disturbing the administrative judge's finding concerning the reasonableness of the penalty.

¶52 The appellant also argues on review that the administrative judge committed harmful procedural error by considering her prior discipline in assessing the reasonableness of the penalty without allowing her to argue the merits of her previous suspensions. PFR File, Tab 1 at 5, 12. The established review process for considering an employee's past discipline is set forth in *Bolling v. Department of the Air Force*, 9 M.S.P.R. 335 (1981). There, the Board held that its review of a prior disciplinary action in the context of a penalty determination is limited to determining whether the action is clearly erroneous, provided that: (1) the

employee was informed of the action in writing; (2) the action is a matter of record; and (3) the employee was permitted to dispute the charges before a higher level of authority than the one that imposed the discipline. *Id.* at 339-40. When those criteria have been met, "[a] challenged prior action will be discounted only if it is 'clearly erroneous' in the sense that it leaves the Board with the 'definite and firm conviction that a mistake has been committed.'" *Id.* at 340.

¶53    The prior disciplinary actions relied on by the agency in deciding to remove the appellant meet the *Bolling* criteria. For each suspension, the appellant was informed of the action in writing, the action was a matter of record, and she was given the opportunity to grieve the action to an official of a higher level of authority than the one who proposed the action. *See* IAF, Tab 5 at 240-43, Tab 7 at 83-85, 114-15. Accordingly, the Board's review of those actions is limited to whether they were clearly erroneous.

¶54    We note that, in assessing the reasonableness of the penalty, the administrative judge did not review the appellant's prior disciplinary actions upon which the agency relied to determine whether they were clearly erroneous. *See* ID at 8-10. Because the appellant challenged the validity of these actions in her appeal, the administrative judge should have done so. *See Morgan v. Department of Defense*, 63 M.S.P.R. 58, 61 (1994) (applying the clearly erroneous standard where the appellant challenged the validity of a prior disciplinary action that the agency considered in assessing the penalty). However, we have reviewed the record evidence regarding the appellant's three prior suspensions, and we are not left with a definite and firm conviction that a mistake has been committed. Accordingly, the administrative judge's failure to consider this issue was not harmful to the appellant. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

¶55    The appellant also argues on review that the deciding official was biased against her because he "sided with" J.F. and the appellant's former supervisor on

every issue in her prior suspensions. PFR File, Tab 1 at 13-14. An appellant's due process rights are violated when his basic rights are determined by a biased decision-maker or by a decision-maker in a situation structured in a manner such that the "risk of unfairness is intolerably high." *Martinez v. Department of Veterans Affairs*, 119 M.S.P.R. 37, ¶ 10 (2012) (citing *Svejda v. Department of the Interior*, 7 M.S.P.R. 108, 111 (1981)). The burden is on the appellant to establish actual bias or an intolerable risk of unfairness. *Id.* The appellant's arguments are insufficient to establish bias, even if the deciding official's role in the appellant's suspensions somehow led him to be predisposed against her. *See Svejda*, 7 M.S.P.R. at 111 (finding no general proscription of the appointment of a person as deciding official who may be familiar with the facts of the case or may have a predisposition against the appellant). The appellant's allegations fail to establish that the deciding official's independent judgment was compromised or that he did not meaningfully consider all of the evidence. Thus, we find that her claim that the deciding official was biased against her provides no basis for disturbing the initial decision.

The administrative judge did not abuse her discretion by denying the appellant's witness requests.

¶56 Throughout her petition for review, the appellant argues that the administrative judge improperly denied her witness requests. PFR File, Tab 1 at 5, 11-12, 23-24; *see* RAF, Tab 19 at 7. An administrative judge has wide discretion to control the proceedings, including the authority to exclude testimony she believes would be irrelevant, immaterial, or unduly repetitious. *Sanders*, 114 M.S.P.R. 487, ¶ 10. The Board will not disturb an administrative judge's decision to deny a party's proposed witnesses unless such denial constitutes an abuse of discretion. *Dangerfield v. U.S. Postal Service*, 77 M.S.P.R. 678, 684-85 (1998).

¶57 In her prehearing submission, the appellant requested approximately fifty witnesses, but failed to make any proffers as to their expected testimony. *See*

IAF, Tab 17 at 10-15. During the prehearing conference, the administrative judge allowed the appellant to amend this omission by making verbal proffers for her proposed witnesses and the administrative judge approved four witnesses, including the appellant, based on her verbal proffers. *See* RAF, Tab 19 at 7. The administrative judge rejected the remaining witnesses, finding that the appellant was not able to describe with specificity how any of those witnesses had relevant or material testimony to offer. *Id.* We discern no abuse of discretion by the administrative judge in denying the appellant's witness requests for that reason.

The appellant has not established judicial bias.

¶58 The appellant also raises a claim of judicial bias on review, alleging that the administrative judge "made several inappropriate comments" during the prehearing conference, PFR File, Tab 1 at 24, and "displayed extreme antipathy" towards her during the hearing, *id*. at 25. Regarding the administrative judge's comments during the prehearing conference, the appellant states that when she tried to explain how her proposed witnesses' testimony was relevant to various issues, the administrative judge told her, "I'm only concerned with one issue: your removal." *Id.* at 24 (citing RAF, Tab 21 at 14). The appellant also cites as evidence of the administrative judge's bias her denial of the appellant's "repeated requests" to allow testimony from any of the agency's human resources employees. *Id.*

¶59 In support of her claim that the administrative judge displayed "extreme antipathy" towards her during the hearing, the appellant asserts that the administrative judge "cut [her] off" several times when she was attempting to clarify inconsistencies in the witnesses' testimony, instructing her to "make [her] point." *Id.* at 25 (citing Hearing CD). She also asserts that the administrative judge allowed the agency's witnesses to "ignore" the questions that were asked or to state "the record speaks for itself." *Id.* at 25-26 (citing Hearing CD).

¶60 In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies

administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). We find that the appellant's claims of bias fail to overcome the presumption of honesty and integrity afforded an administrative judge. *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) (an administrative judge's conduct during the course of a Board proceeding evidences bias warranting a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible"). Even assuming that the statements attributed to the administrative judge (at the prehearing conference and during the hearing) by the appellant were true, they do not constitute evidence of "a deep-seated favoritism or antagonism that would make fair judgment impossible." *See* 5 C.F.R. § 1201.41(b)(6) (an administrative judge has the authority to "regulate the course of [a] hearing"). In addition, as previously discussed, the administrative judge did not abuse her discretion in denying the appellant's witness requests. In any event, an administrative judge's case-related rulings, even if erroneous, are insufficient to establish bias. *See, e.g.*, *Argabright v. Department of Defense*, 113 M.S.P.R. 152, ¶ 10 (2010); *Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶ 11 (2004). Thus, we find insufficient evidence to overcome the presumption of honesty and integrity that the administrative judge enjoys.[13]

The documents submitted by the appellant on review are either not new or not material.

¶61      The appellant submits several documents on review, *see* PFR File, Tab 6 at 20-33, Tabs 7-8, some of which are already part of the record and thus are not

---

[13] We likewise find that the administrative judge properly denied the appellant's motion to recuse and motion to certify for interlocutory appeal her denial of the appellant's recusal motion, based on many of the same allegations of bias that she makes on review. In any event, the question of whether the administrative judge should have certified the recusal issue for interlocutory review is moot because the administrative judge has adjudicated this appeal and the appellant has filed a petition for review.

new. *Compare* PFR File, Tab 6 at 30-33, *with* RAF, Tab 4 at 211-14 *and* PFR File, Tab 7 at 5-12, *with* RAF, Tab 3 at 70-77; *see Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980) (evidence that is already part of the record is not new). Other documents submitted on review predate the close of the record and the appellant has not shown that these documents, or the information contained therein, were unavailable before the record closed despite her due diligence. *See* PFR File, Tab 6 at 20, 22-28, Tab 8. Therefore, we have not considered them. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). Although the July 9, 2014 EEOC decision that the appellant submits on review is new evidence in that it post-dates the close of the record below, *see* PFR File, Tab 7 at 15-20, that decision is not material to the outcome of this appeal because it does not show that any of the administrative judge's findings are erroneous or that a different outcome is warranted, *see Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980). Therefore, it provides no basis to disturb the initial decision.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS[14]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

---

[14] The initial decision did not afford the appellant notice of appeal rights under the Whistleblower Protection Enhancement Act of 2012. We have provided notice of such appeal rights herein.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:


Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar

days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction to review this final decision. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:          _____
                        William D. Spencer
                        Clerk of the Board

Washington, D.C.